THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY B. HILL, Appellant, v. HOWARD R. CRISSEY and Others, Respondents.

*Cornell University — selection of scholars for university scholarships under section 9 of chapter 585 of 1865, as amended by chapter 654 of 1872, chapter 614 of 1886 and chapter 291 of 1887 — students in Normal schools are not eligible.*

The term "public school," as used in section 9 of the act establishing Cornell University (chap. 585 of 1865, as amended by chap. 654 of 1872, chap. 614 of 1886 and chap. 291 of 1887), authorizing the commissioners of each county and the board of education of each city to "select annually the best scholars from *each academy* and *each public school* of their respective counties or cities as candidates for the university scholarship," does not include "Normal schools," and students in such schools cannot be selected.

Appeal from an order of the Erie Special Term, denying a motion for a *mandamus*.

*N. H. Hill*, for the appellant.

*I. S. Lambert*, for the respondents.

Smith, P. J.:

Section 9 of the act establishing Cornell University (Laws 1865, chap. 585), as amended (Laws 1872, chap. 654; Laws 1886, chap. 614), provided for the admission to said university, for free instruction, of one student from each assembly district, annually, to be selected as therein provided. By the terms of the section, as amended by the acts referred to, the power of selection was vested in the school commissioner or commissioners of each county, and the board of education in each city, and in performing the duty, they were required to select " the best scholar from each academy and each public school of their respective counties or cities as candidates for the university scholarship." They were then to examine the persons so selected and determine which of them were " the best scholars," and to certify the two highest candidates, the first of whom should be admitted to the university as provided in the act, and so many of the second as the trustees of the university, in their discretion, should admit, not exceeding the full number for the class of each year.

It appears from the appeal papers that in the year 1886 the school commissioners of the county of Chautauqua made no selection of candidates for examination, but instead of selecting gave notice by publication in certain newspapers in the county, that at a time and place therein specified, they would examine such persons as should attend for that purpose, and determine to whom the scholarship for that year should be awarded. The county of Chautauqua is divided into two assembly districts and is entitled to two scholarships each year, under said statute. An examination was held pursuant to such notice, and six persons appeared as candidates and were examined. Among them were Herman L. Gifford, who was determined to be. the best scholar, Howard B. Crissy, one of the defendants, the second, and the relator, Mary B. Hill, the third. The relator contends, among other things, that said Howard B. Crissy was not eligible to such scholarship by reason of the fact that he was a

student in the State Normal and Training school, at Fredonia, and not of any other school or academy, and that such Normal school is not one of the "public" schools or the county within the meaning of the acts referred to. That contention presents the only question which we propose to consider.

We are inclined to the opinion that by the words "public schools" the legislature intended "common" schools only, and that "Normal" schools were not included. It is true that in an enlarged sense, normal schools are public schools, inasmuch as any citizen of the State, possessing the requisite qualifications and being selected as provided by law, may be admitted to them. In the same sense, colleges are public schools, but clearly they are not embraced in the act. The object of normal schools is to give instruction in the art of teaching. The distinctions between them and the common schools are marked. They have been defined by the Court of Appeals as follows: "These normal schools differ materially from the common schools to which the Constitution refers. They are not intended for the education of the children of the inhabitants of the districts where they are located, but for the training of teachers for all the common schools. They are not open to all, but only to such as may be selected at times, and in the manner prescribed by the superintendent of public instruction Each part of the State is entitled to its due representation. Applicants for admission are required to possess certain qualifications, which must be tested by preliminary examination." (*Gordon* v. *Cornes*, 47 N Y., 616.)

Normal schools were in existence in this State when the act of 1865 was passed, the first having been established in 1844. (Laws 1844, chap. 311.) It is to be presumed that if they had been intended by the act they would have been named. That the legislature regarded the term "public schools" as not embracing academies, is evident from the fact that academies were specially mentioned. What reason is there for supposing that the term was intended to embrace normal schools and not academies?

A practical construction has been given to the act of 1865, that favors the relator's contention. In December, 1867, the superintendent of public instruction issued a circular to the several school commissioners and supervisors in the State, calling their attention to the act and urging them to make efforts to fill the scholarships

created by it. In the circular he stated that the candidates were to be selected from all the academies and "common" schools of the State. He evidently regarded the term "public schools" used in the act as synonymous with "common schools." (Code of Public Instruction, 1868, p. 490.) In 1869 the Regents of the University made a report to the legislature upon a subject specially referred to them, in which they used the terms "public schools" and "common schools" indiscriminately. (Historical Record of University of New York, 1885, p. 71.) In numerous reported decisions of the courts the terms referred to are used as synonymous. Instances of such use are found in *Dallas* v. *Fosdick* (40 How. 249), and in the recent case of *People ex rel. King* v. *Gallagher* (93 N. Y., 438), not to cite others. The latter case arose under Laws 1850, chapter 143, in which act the like use of the terms in question is made by the legislature. It is entitled an act to reorganize and regulate the *common* schools and the board of education in the city of Brooklyn, and its second section provides that "the board of education shall have the entire charge and direction of all the *public* schools of said city * * * and shall possess the powers and be subject to the general duties of trustees of *common* schools in this State." And in other instances the act uses the terms referred to indiscriminately.

One object of the act of 1865, in providing for free scholarships in Cornell, was to furnish an incentive to pupils in the academies and public schools to strive for as high a degree of scholarship as those schools would afford. But that incentive would be greatly lessened if they were subjected to competition with students enjoying the more favorable opportunities and the higher grade of instruction furnished by the normal schools. It can hardly be supposed that such competition was intended by the authors of the act. The force of this consideration is not impaired by the fact that there have been, and still are, teachers' classes in the academies, the members of which are possibly eligible as candidates for the Cornell free scholarships, within the letter of the act. Whether students of that class were intended to be made eligible may be questionable; but even if they were, it does not follow that students in the normal schools were intended to be included. The normal schools were established because the need was felt of a higher grade of instruction, and better opportunities for learning the art of

teaching, than were or could be furnished to teachers' classes in the academies.

But the question seems to have been put at rest by the action of the legislature at its late session. Chapter 291 of the Laws of 1887 further amends section 9 of the act of 1865, and it shows very clearly that by the words "public schools," used in the act, the "common" schools, and those only, were intended. After providing, in the language of the original act, that the free instruction provided for shall be accorded to the students selected, in "consideration of their superior ability and as a reward for superior scholarship in the academies and *public* schools of the State," it goes on to enact that "none but pupils of at least sixteen years of age and of six months' standing in the common schools or academies of the State, during the year immediately preceeding the examination, shall be eligible." This not only prescribes a clear rule for the future, but it seems to be an express legislative definition of the term "public schools" as used in the original act and its several amendments. If these views are correct, it follows that the defendant Crissy was not eligible, and that the relator was entitled to the second certificate.

The order appealed from should be reversed, and the motion for a *mandamus* granted, but without costs of the appeal, as the question is new and one of public interest, and the commissioners appear to have acted in good faith.

HAIGHT and BRADLEY, JJ., concurred.

Order reversed, without costs, and motion for *mandamus* granted.